UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARIO JESUS RAMIREZ, § <br> TDCJ No. 01994356, § <br> § <br> Petitioner, § <br> § <br> v. § <br> § <br> LORIE DAVIS, Director, § <br> Texas Department of Criminal Justice, § <br> Correctional Institutions Division, § <br> § <br> Respondent. § | Civil No. SA-18-CA-01239-DAE |

### MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner Mario Jesus Ramirez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent Lorie Davis's Answer (ECF No. 8), and Petitioner's Reply (ECF No. 12) thereto. Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

### I. Background

In April 2015, a Bexar County jury found Petitioner guilty of the murder of Ofelia Alvarado and sentenced him to life imprisonment. *State v. Ramirez*, No. 2011-CR-10323 (379th Dist. Ct., Bexar Cnty., Tex. Apr. 13, 2015) (ECF No. 9-30 at 34-35). The Texas Fourth Court of Appeals affirmed Petitioner's conviction in an unpublished opinion on direct appeal. *Ramirez v. State*, No. 04-15-00240-CR, 2016 WL 3030965 (Tex. App.—San Antonio, May 25, 2016, pet. ref'd); (ECF No. 9-24). The Texas Court of Criminal Appeals (TCCA) then refused his petition for discretionary review (PDR). *Ramirez v. State*, No. 1005-16 (Tex. Crim. App. Nov. 2, 2016).

In January 2018, Petitioner filed a state habeas corpus application challenging the constitutionality of his state court conviction, but the TCCA eventually denied the application without written order on November 21, 2018. *Ex parte Ramirez*, No. 89,161-01 (Tex. Crim. App.); (ECF Nos. 9-26, 9-29 at 20).

Petitioner initiated the instant proceedings on November 28, 2018. (ECF No. 1 at 15). In the petition, Petitioner raises the same ineffective-assistance-of-trial-counsel (IATC) claims that were rejected by the TCCA during his state habeas proceedings. Specifically, Petitioner claims counsel was ineffective for failing to: (1) call character witnesses at the guilt/innocence phase, (2) call the defense investigator or psychologist as witnesses at the guilt/innocence phase and punishment phase, (3) call a pretrial services officer at the guilt/innocence phase, and (4) use the victim's diary at the guilt/innocence phase. In her answer, Respondent essentially transcribes the state court's adjudication of these allegations and then argues, with little independent analysis, that federal habeas relief is precluded under the AEDPA's deferential standard. (ECF No. 8). Petitioner's reply to Respondent's answer (ECF No. 12) provides additional briefing to the claims raised in his original petition and raises an additional ground for relief—that counsel was ineffective for failing to object to the improper impeachment of Petitioner during his guilt/innocence testimony.

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. Merits Analysis

A.  **Trial Counsel** (Claims 1-4).

Petitioner briefly asserted several IATC claims in his federal petition, each one having been raised and rejected during Petitioner's state habeas proceedings. Specifically, Petitioner contends trial counsel failed to: (1) call the eleven character witnesses who testified at the punishment phase to testify at the guilt/innocence phase regarding Petitioner's character for truthfulness, (2) call the defense's investigator and expert psychologist to testify at the guilt/innocence and punishment stages, (3) call a pretrial services officer at the guilt/innocence phase to show that Petitioner did not go near the victim's house, and (4) use the victim's diary at the guilt/innocence phase to establish her depression and suicidal thoughts. As discussed below, Petitioner fails to demonstrate the state habeas court's rejection of these challenges was either contrary to, or an unreasonable application of, Supreme Court precedent.

   1.  The *Strickland* Standard

The Court reviews Sixth Amendment IATC claims under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland*, 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant

4

decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

2.  Uncalled Character Witnesses (Claim 1)

Petitioner first asserts that counsel was ineffective for failing to call any character witnesses on his behalf at the guilt/innocence phase of trial. According to Petitioner, counsel should have called the eleven witnesses who eventually testified at the punishment phase—almost all of whom were family members or friends—to testify at the guilt/innocence phase

5

about Petitioner's "character traits for law abidingness, peacefulness, and truthfulness." Because counsel called none of these witnesses, Petitioner contends he was forced to testify on his own behalf and was subject to difficult cross-examination by the prosecution which damaged his case.

Petitioner raised this allegation during his state habeas proceedings. In response, trial counsel submitted an affidavit wherein he summarized the facts concerning this allegation:

> [Petitioner] entered a plea of not guilty before a jury which found him guilty to the murder of Ofelia Alvarado on November 11, 2010 and assessed punishment at life imprisonment. Cause of death was multiple stab wounds with a critical wound to the throat. Overall there were six puncture wounds to the front and back of Alvarado. She was found dead in her kitchen naked and covered with a blanket.
>
> [Petitioner]'s testimony before the jury, at the guilt/innocence phase, denied he inflicted the lethal stab wounds to Alvarado, whom he called a friend without a romantic relationship. [Petitioner] told the jury he attempted to prevent Alvarado from committing suicide after he found a suicide note on a table. Alvarado became enraged and attacked [Petitioner] striking him on his head. Alvarado then removed her clothes, cleansed herself with Clorox, grabbed two knives from the kitchen, and inflicted knife wounds to her naked body. Alvarado expressed despair in her life meant because she loved children and she could no [sic] bear children. [Petitioner] testified he attempted to take the knives out of her hands to prevent Alvarado from suicide. There was a struggle that resulted in Alvarado inflicting multiple knife wounds that eventually caused her death. [Petitioner] denied he inflicted any stab wounds; without any explanation for the wounds to her backside.
>
> Alvarado's sister entered the house without being aware of [Petitioner]'s presence. [Petitioner] quickly gathered Alvarado's clothing and other items that he placed into a basket. [Petitioner] carried that basket with him as he exited the house without detection and drove home. DNA established the presence of Alvarado's blood on those items, that included a bloody knife with a fragment missing that matched a fragment found at the crime scene. Forensic DNA testing also established a high probability Alvarado and [Petitioner] were not excluded as the donor of blood evidence found on the items removed by [Petitioner] and items at Alvarado's residence. Counsel filed a motion to suppress the search and seizure of evidence in [Petitioner]'s car which motion was denied by this Court after an evidentiary hearing. The ruling by the trail court was not contested by counsel on appeal.

ECF No. 9-31 at 14-19. In the same affidavit, counsel also addressed Petitioner's assertion of ineffective assistance:

6

[Petitioner] fails to identify any witness or specify the content of their testimony that would have negated a verdict of guilt or changed the outcome of [Petitioner]'s murder conviction and life sentence. [Petitioner] and Alvarado were the only persons present.

[Petitioner] steadfastly denied being present at the home of Alvarado or to stabbing Alvarado when he gave a voluntary video recorded interview with police. However, at trial [Petitioner] testified he was present and Alvarado committed suicide by self-inflicted knife wounds.

[Petitioner] maintained that same resolve of denial to his defense team, myself and William Brooks, an attorney employed by Counsel, both of whom were bound by the attorney-client privilege. [Petitioner] gave similar version of the stabbing death of Alvarado to investigator Ray Ybarbo; psychologist Judith Craig; defense psychiatrist Randall Sellers; and Stan Ramos, a former commissioned law enforcement officer, who was dating [Petitioner]'s mother. Throughout those interviews [Petitioner] maintained an unwavering denial he was not responsible for Alvarado's death, that her death was suicide by self-inflicted knife wounds.

[Petitioner]'s unwavering denial of his guilt was contrary to DNA and physical evidence [which] foreclosed counsel from presenting character evidence to establish his good character or his credibility before a jury. Counsel is of the opinion such character evidence, at the guilt/innocence phase, would not have significant relevance to material fact issues relating to a defense that would exculpate [Petitioner]. Therefore, there was no sound trial strategy for counsel to introduce character evidence of good behavior or honesty because [Petitioner] testified Alvarado committed suicide by self-inflicted stab wounds.

* * *

[Petitioner]'s steadfast denial to stabbing Alvarado prevented counsel from presenting evidence under Art. 36.36, Texas Code of Criminal Procedure, which permits the defense to offer testimony as to all relevant facts and circumstances surrounding the relationship between [Petitioner] and Alvarado, or to show the condition [of] [Petitioner]'s mind or to establish he had a reasonable use of force was immediately necessary.

Consequently, [Petitioner] eliminated any sound trial strategy by counsel to present character witnesses to show good character traits of being law abiding, peaceful, and non-violent. Contrary to [Petitioner]'s testimony before the jury, the facts and evidence established a violent and brutal murder most likely committed during a rage of anger by [Petitioner]'s inflicting multiple stab wounds to Alvarado causing her death. That evidence coupled with [Petitioner]'s flight and attempt to conceal evidence of his involvement negated any relevant fact issues at trial that could have been supported by character evidence sufficiently persuasive for the jury to render a verdict other than guilty.

7

*Id.* The state habeas trial court found trial counsel's affidavit credible and that counsel made a reasonable strategic decision to avoid calling the witnesses set forth in his complaint. *Id.* at 41-46. These findings and conclusions were adopted by the TCCA when it denied Petitioner's state habeas application. ECF No. 9-26.

Petitioner fails to show that the state court's ruling was contrary to, or involved an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record. Trial counsel's affidavit—adopted by the state habeas court and ultimately by the TCCA—thoroughly explained how the facts and evidence against Petitioner, along with Petitioner's unwavering denial of guilt and adherence to an implausible defensive theory, rendered the presentation of character witnesses on his behalf a poor trial strategy. Petitioner has not shown that this determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Moreover, this Court has independently reviewed the record of these proceedings and finds that counsel's strategic decision not to call these witnesses was reasonable. "[C]ounsel has wide latitude in deciding how best to represent a client. . ." *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 8 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect."). Indeed, counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill

chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003).

Petitioner fails to demonstrate that trial counsel's strategy was ill chosen. To the contrary, the record indicates that counsel made the decision not to call Petitioner's character witnesses based on Petitioner's steadfast insistence that Alvarado's death was the result of suicide by self-inflicted knife wounds juxtaposed against the overwhelming evidence indicating Petitioner was, in fact, guilty. This background, coupled with the fact that Petitioner admittedly fled the scene of the crime, attempted to conceal evidence of his involvement, then lied to police in a video-recorded interview, led counsel to make the informed strategic decision not to present evidence of Petitioner's good behavior or honesty, particularly since such evidence would have little relevance to the fact issues being determined at the guilt/innocence phase. Petitioner has not shown that this decision was unreasonable, much less that the state court's denial of this claim was an unreasonable application of *Strickland*. Thus, under the "doubly" deferential review encompassed by *Strickland* and the AEDPA, Petitioner's claim cannot survive. *See Richter*, 562 U.S at 105.

3. <u>Defense Investigator and Psychologist</u> (Claim 2)

Petitioner next faults counsel for failing to call psychologist Dr. Judith Craig or investigator Ray Ybarbo—both members of the defense team—to testify at either the guilt/innocence phase or punishment phase. After being cross-examined during his guilt/innocence phase testimony for his prior inconsistent statements to police, Petitioner contends counsel should have called either of these witnesses to establish that he had given statements to the experts during their respective interviews that were consistent with his trial testimony. Petitioner also contends Dr. Craig, who conducted a psychological evaluation of

9

Petitioner, should have been called as an expert at both the guilt/innocence and punishment phases to explain his behavior and why Petitioner lied to police following his arrest.

Petitioner raised these allegations during his state habeas proceedings. As with the previous allegation, trial counsel responded to Petitioner's assertions in his affidavit to the state habeas trial court. ECF No. 9-31 at 17-19. In that affidavit, counsel noted that Dr. Craig's evaluation, in part, described Petitioner as having narcissistic tendencies but that he tended to become extremely disorganized when scared or in high-stress situations, and is capable at those times of losing control of his impulses. *Id.* Counsel then concluded:

> Dr. Craig and I discussed the benefits an[d] adversities of her testimony from her psychological findings. The good was [Petitioner] showed no psychosis or [thought] disorder, or psychopathology. However, adverse to [Petitioner]'s best interest Dr. Craig believed her testimony could be considered that of a two-sided sword that would result in the State turning her findings against [Petitioner] due to his inability to cope with stress and loss of impulse control. Another concern was [Petitioner]'s steadfast denial of his involvement in Alvarado's [sic] could influence the jurors [Petitioner] constituted a serious threat to society, if he were allowed back on the streets.
>
> Dr. Craig's assessment was susceptible to being used by the State to argue [Petitioner]'s narcissistic nature and loss of impulse control could [have] explained Alvarado's death was not a suicide. [Petitioner]'s denial would be perceived by a jury as untruthful due to evidence inconsistent with suicide. Therefore the State could have used Craig's testimony to persuade a jury [Petitioner] lost control under the pressure of Alvarado's rejection of his advances or that they had a heated argument that went our [sic] of control. Coupling that with [Petitioner]'s attempt to conceal evidence and denial of stabbing Alvarado would have nullified Dr. Craig's testimony. Therefore there was a mutual consensus Dr. Craig not testify.

*Id.* The state habeas trial court found trial counsel's affidavit credible and that counsel made a reasonable strategic decision to avoid calling either Ybarbo or Dr. Craig because of the overwhelming evidence of Petitioner's guilt and the fact that Petitioner's statements to them placed him at the scene of the crime. *Id.* at 43-45. These findings and conclusions were then adopted by the TCCA. ECF No. 9-26.

Petitioner fails to show that the state court's ruling was contrary to, or involved an unreasonable application of *Strickland*. Again, trial counsel generally have broad discretion when it comes to deciding how best to proceed strategically, and such choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 673; *Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015) (noting the Supreme Court has emphasized counsel has "wide latitude in deciding how best to represent a client.").

Here, the record indicates counsel made a reasonable strategic decision to avoid calling either Ybarbo or Dr. Craig at the guilt/innocence phase. While both witnesses could have theoretically confirmed that Petitioner gave them a statement consistent with his testimony, the benefits of such testimony would have been slight given the overwhelming evidence against Petitioner and the fact that their testimony could actually place Petitioner at the scene of the crime. Such testimony would also fail to negate the fact that Petitioner lied to the police. Furthermore, Dr. Craig's evaluation of Petitioner could have been used against him to advance the theory that his narcissistic nature and loss of impulse control were partially to blame for Alvarado's murder. Thus, counsel's decision not to call these witnesses at guilt/innocence was anything but unreasonable.

Furthermore, Dr. Craig's assessment that Petitioner was a narcissist who lacked impulse control could have been used against Petitioner at the punishment phase as well. While this testimony ostensibly could have been used by the defense to explain Petitioner's behavior, such evidence is, at best, a "double-edged" sword that could also have been used to demonstrate Petitioner is a continuing threat to society. The decision to forego presenting "double-edged" evidence was also a reasonable trial strategy. *Gray v. Epps*, 616 F.3d 436, 449 (5th Cir. 2010)

11

(petitioner could not show prejudice because much of the new evidence was double-edged and could be interpreted as aggravating); *Hopkins v. Cockrell*, 325 F.3d 579, 586 (5th Cir. 2003) (holding "that a tactical decision not to pursue and present potentially mitigating evidence on the ground that it is double-edged in nature is objectively reasonable"); see also *Reed v. Vannoy*, 703 F. App'x 264, 270 (5th Cir. 2017) (unpublished) (finding "double-edged evidence cannot support a showing of prejudice under *Strickland*.").

Consequently, viewing this allegation under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief.

4.  Pretrial Services Officer (Claim 3)

Next, Petitioner contends counsel was ineffective for not calling a pretrial services officer to testify on his behalf at the guilt/innocence phase. Veronica Romo and Jacqueline Bauerband were pretrial services officers who monitored Petitioner's release on bond via a GPS monitoring device following his arrest. Both testified on Petitioner's behalf at the punishment phase that Petitioner fully complied with the requirements of his pretrial supervision, including his prohibition from being near the victim's family residence. Petitioner now seems to argue that the witnesses should have been called at the guilt/innocence phase to establish that Petitioner was not at the victim's house on the day of her murder.

Trial counsel addressed Petitioner's perplexing claim in his affidavit to the state habeas trial court:

> [Petitioner]'s argument Bauerbond should have been called as a witness at the guilt/innocence phase to establish he was not at Alvarado's house on the day of her murder is without merit. [Petitioner] was placed on GPS monitoring several months after his arrest for the murder of Alvarado. Because [Petitioner] was not placed on GPS monitoring at the time of the murder, it was impossible to use GPS positioning of [Petitioner]'s whereabouts on the day of Alvarado's murder. Pretrial officer Bauerbond did have any access to GPS location data

12

before the murder. As such Bauerbond could not have truthfully provided testimony to alibi evidence for [Petitioner].

ECF No. 9-31 at 17. The state habeas trial court found counsel's affidavit credible and that counsel made a reasonable strategic decision to not call the aforementioned witnesses. *Id.* at 44. The TCCA then adopted these findings and conclusions. ECF No. 9-26.

Petitioner has not rebutted the state court's finding of fact with clear and convincing evidence. Indeed, it is hard to imagine how he could, as neither witness could have possibly testified to Petitioner's whereabouts before he was actually arrested for the crime and placed under the supervision of pretrial services. To the extent Petitioner is arguing the witnesses should have testified to his whereabouts *after* he was arrested and released on bond, he fails to provide any argument as to how such testimony would be relevant at the guilt/innocence phase of trial. Such conclusory assertions are insufficient to support a claim for ineffective assistance, much less constitute "clear and convincing evidence" sufficient to overcome the presumption of correctness attributed to the trial court's finding of counsel's credibility and competence. *See Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013); *Woodfox v. Cain*, 609 F.3d 774, 809 n.17 (5th Cir. 2010). Petitioner's claim is therefore denied.

5. <u>The Victim's Diary</u> (Claim 4)

In Petitioner's last IATC claim he asserts in a single sentence that counsel was ineffective for failing to use the victim's diary to establish she was depressed and thus suicidal. Petitioner provides absolutely no argument to support this conclusory assertion, but instead attaches an entry from a diary dated July 23, 2009, well over a year prior to Alvarado's murder. (ECF No. 12-7). However, such conclusory assertions of deficient performance are insufficient to support a claim for ineffective assistance of counsel. *Woodfox*, 609 F.3d at 809 n.17; *Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010); *Day v. Quarterman*, 566 F.3d 527, 540 (5th Cir.

13

2009). Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims. As Petitioner has provided no briefing in support of his allegation, it is subject to summary dismissal. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (same).

Furthermore, the law "does not require counsel to raise every available nonfrivolous defense." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009). Here, the one-page diary entry provided by Petitioner hardly establishes that the victim was suicidal, much less that she remained so up until the date of the instant offense. Thus, Petitioner's trial counsel could reasonably have concluded the diary entry was irrelevant or unlikely to prove productive. But again, counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable." *Strickland*, 466 U.S. at 690; *Trottie v. Stephens*, 720 F.3d 231, 243 (5th Cir. 2011) (holding the failure to present a particular line of argument is presumed to be the result of strategic choice). Relief is therefore denied.

6. <u>Lack of Prejudice</u>

Finally, even if Petitioner could establish that counsel's performance in this case constituted deficient performance, he still fails to demonstrate that the alleged errors were prejudicial to his defense. Again, to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "[A] court assessing prejudice must consider the totality of the evidence before the judge or jury." *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 696) (internal quotation marks omitted).

Petitioner has not established that the alleged errors were prejudicial with regard to his guilt because, as the record demonstrates, the State's case was strong and there was substantial evidence establishing Petitioner's guilt. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (noting the weight of the evidence of guilt in finding alleged deficient performance of counsel not prejudicial); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008). This evidence included: (1) DNA evidence establishing a strong probability Petitioner was present at the crime scene, (2) Petitioner's testimony admitting to being at the crime scene, (3) evidence containing the victim's DNA that was removed from the crime scene and found in Petitioner's car, including a knife, the victim's bra and underwear, a towel, and quart of bleach, (4) Petitioner's testimony admitting to fleeing the scene of the crime, attempting to conceal evidence of his involvement, and lying to police about being in the home; and (5) the fact that the victim had stab wounds on her neck and back which conflict with Petitioner's assertion that she committed suicide. Similarly, with regard to his punishment-phase assertion (Claim 2), Petitioner also has not established prejudice given the nature of Petitioner's offense and the fact that he refused to accept responsibility for his actions.

Given the overwhelming nature of the evidence against Petitioner, there is simply no reasonable probability that the jury would have voted to acquit Petitioner had counsel presented the above testimony and evidence as he now contends. As such, Petitioner is unable to establish that counsel's performance was deficient or that he was prejudiced by counsel's alleged errors. Because Petitioner fails to demonstrate that the state court's denial of Petitioner's IATC allegations was not an unreasonable application of *Strickland*, relief on these claims is therefore denied.

B.   **Petitioner's Fifth Claim is Time-barred.**

Under the AEDPA, a state prisoner has one year to file a federal petition for habeas corpus, starting, in this case, from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013). Petitioner's judgment became final for limitations purposes on January 31, 2017, ninety days after the TCCA affirmed his conviction and when the time for filing a petition for writ of certiorari to the United States Supreme Court expired. *See* Sup. Ct. R. 13.1; *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) ("§ 2244(d)(1)(A) . . . takes into account the time for filing a certiorari petition in determining the finality of a conviction on direct review"). As a result, the limitations period under § 2244(d) for filing his federal habeas petition expired a year later on January 31, 2018. Petitioner's state habeas application then tolled the limitations period for 309 days, making his federal petition due on December 6, 2018. *See* 28 U.S.C. § 2244(d)(2).

Petitioner's § 2254 Petition (ECF No. 1) was filed on November 28, 2018, well before the one-year limitations period expired. However, Petitioner's fifth claim for relief—alleging that trial counsel was ineffective for failing to object to improper cross-examination questions—was raised for the first time on July 2, 2019, in Petitioner's reply to Respondent's answer (ECF No. 12). Because this claim was raised for the first time almost seven months after the limitations period expired, the claim is barred by the one-year statute of limitations unless it relates back to a timely-filed allegation or is subject to equitable tolling.

1.   **Petitioner's new claim does not "relate back."**

Federal Rule of Civil Procedure 15(c)(2) instructs that an amended pleading relates back to the date of the original pleading when the claim asserted in the amended pleading "arose out

16

of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Whether an amended claim relates back to the date of an earlier filed pleading depends on whether that claim asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the original pleading. *Mayle v. Felix*, 545 U.S. 644, 650 (2005). Only those claims in the amended pleading that are tied to a common core of operative facts as the claims in the original petition will relate back to the original petition and will be considered timely filed. *Id.* at 664.

Petitioner's new IATC claim (that counsel failed to object to improper cross-examination) differs from the original claims asserted in his federal petition (regarding counsel's failure to call certain witnesses). Although they are all IATC claims, "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they rest on the same constitutional violation." *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009). None of Petitioner's original IATC claims involve counsel's failure to object or mention any facts that would form the basis of the new IATC claim. Rather, Petitioner attempts to introduce a new legal theory on facts different from those underlying the original claims. *See, e.g., Gonzalez*, 592 F.3d at 679 (quoted case omitted) (IATC claim does not relate back to original petition when original IATC claims involve an "entirely distinct type of attorney misfeasance" from the claim asserted in the amended pleading).

Because Petitioner's new IATC claim is completely unrelated to the IATC claims raised in the first petition, the new claim does not relate back to the original petition and is therefore barred by the statute of limitations.

2. <u>Equitable Tolling</u>

The Supreme Court has made clear that a federal habeas corpus petitioner may avail himself of the doctrine of equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013); *Holland v. Florida*, 560 U.S. 631, 649 (2010). However, equitable tolling is only available in cases presenting "rare and exceptional circumstances," *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002), and is "not intended for those who sleep on their rights." *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012).

Petitioner has not demonstrated that he diligently pursued habeas relief on his fifth allegation during the limitations period. Petitioner waited until the end of the limitations period to file his original federal habeas petition (ECF No. 1), and did not raise the instant claim until seven months after the limitations period when he filed his reply to Respondent's Answer (ECF No. 12). Moreover, Petitioner fails to establish that any extraordinary circumstances prevented him from raising the claim earlier. "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson,* 184 F.3d 398, 402 (5th Cir. 1999) (internal quotation and citation omitted). Petitioner makes no argument that either situation occurred. Consequently, because Petitioner does not assert any specific facts showing that he was prevented, despite the exercise of due diligence on his part, from timely filing his allegation in this Court, his fifth claim for relief is untimely and barred by § 2244(d)(1).

## IV. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing Section 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V. Conclusion and Order

After careful consideration, the Court concludes that Petitioner's fifth allegation is barred from federal habeas corpus relief by the statute of limitations set forth in 28 U.S.C. § 2244(d). The Court also concludes Petitioner has failed to establish that the state court's rejection of Petitioner's first four allegations on the merits during his state habeas proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial and

habeas corpus proceedings. Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Mario Jesus Ramirez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this the __22__ day of July, 2020.

DAVID A. EZRA
SENIOR U.S. DISTRICT JUDGE